**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| VISUAL COMMUNICATIONS, INC., | : | |
| Plaintiff | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 08-1877 |
| KONICA MINOLTA BUSINESS | : | |
| SOLUTIONS U.S.A., INC., | : | |
| Defendant | : | |

**April _27ᵗʰ ___, 2009**                                                **Anita B. Brody, J.**

### MEMORANDUM

This case arises from two broken color copiers. The defendant Konica Minolta Business

Solutions U.S.A., Inc., ("Konica" or "KMBSUS") manufactured the copiers and sold them to

IKON Office Solutions, Inc. ("IKON"). The plaintiff Visual Communications, Inc., ("Visual")

then leased the copiers from IKON and began using them. However, the copiers malfunctioned

so often that Visual rented other copiers to replace them. Visual then sued Konica for breach of

an express warranty and for breaches of the implied warranties of merchantability and fitness for

a particular purpose under the Pennsylvania Uniform Commercial Code, 13 Pa. Cons. Stat. Ann.

§§ 1101-9710. Jurisdiction exists under 28 U.S.C. § 1332.[1] Before me now is Konica's motion

for summary judgment under Federal Rule of Civil Procedure 56 (Doc. #20).

---

[1] Complete diversity exists because Konica was incorporated in New York and has its principal
place of business in New Jersey, whereas Visual was incorporated in Pennsylvania and also has
its principal place of business in Pennsylvania. The amount in controversy exceeds $75,000.

# I. BACKGROUND[2]

In 2003, Konica and IKON entered into a contract in which Konica agreed to sell copiers to IKON for resale or lease to IKON's customers ("Distribution Agreement"). The contract contains the following provision:

> KMBSUS warrants that Product(s) and parts thereof delivered hereunder will meet the applicable Specifications for such Product(s) (attached hereto as Exhibit B) and shall be free from defects in material and workmanship for a period of one hundred eighty (180) days from the date IKON receives the Product(s). If, during such one hundred eighty (180) day period, KMBSUS is notified of any defect in the Product, then KMBSUS shall, within thirty (30) days of notification thereof and at KMBSUS's option, either repair, replace or credit IKON for such Product or component thereof.[3]

(Pl.'s Ex. A at 4.) The contract also provides that "IKON may pass through and assign any and all warranties, representations and indemnities provided by Konica hereunder to its customers for their benefit." (Pl.'s Ex. A at 5.)

Visual designs and builds exhibits for trade shows, and makes presentations to prospective customers. In June 2005 and May 2006, Konica sold two color copiers to IKON pursuant to the Distribution Agreement. The copier sold in 2005 was the BP 500C, and the one sold in 2006 was the CPP 500. After each purchase, IKON leased the copier to Visual for a five-year term. Both lease agreements between Visual and IKON contain the following provision:

> We transfer to you without recourse, for the term of this Agreement, any written warranties made by the manufacturer with respect to the Equipment. Since we are

---

[2] For purposes of summary judgment, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in [that party's] favor." Hunt v. Cromartie, 526 U.S. 541, 552 (1999). Thus, the facts are stated in the light most favorable to Visual, with all justifiable inferences drawn in its favor.

[3] Exhibit B states that the machine can copy 150 thousand pages per month. (Pl.'s Ex. A at 12.)

a finance company and neither the manufacturer nor the distributor of the Equipment, WE MAKE NO WARRANTIES, EXPRESS, OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY OR FITNESS FOR USE OR FOR A PARTICULAR PURPOSE. You acknowledge that you have selected the Equipment you are renting from us based on your own judgment and you hereby affirmatively disclaim reliance on any oral representations concerning the Equipment made to you.

(Pl.'s Ex. G-1 at 2; Pl.'s Ex. G-2 at 2.)

In Konica's product literature, the BP 500C and CPP 300 copiers are called the Bizhub PRO C500 model. IKON's proposal to Visual dated June 16, 2005, states that this model "will handle up to 150,000 impressions per month." (Pl.'s Ex. D at 4.) A print-out of Konica's website dated March 14, 2008, also indicates that this model has a "150,000 page monthly duty cycle." (Pl.'s Ex. E at 1.)

Visual used the copiers immediately and found them unreliable from the start. Although Visual made on average fewer than 5 thousand copies per month on one copier and fewer than 14 thousand copies per month on the other one, both copiers often jammed or made poor copies.[4] Visual was forced to request service from IKON at least twice each month from January to August 2007.[5] But servicing the copiers provided only temporary relief. Ultimately, Visual had to replace them. In September 2007, Visual leased two new copiers from Oce North America and tendered the old copiers to IKON for repossession.

---

[4] An expert hired by Konica called this tendency to malfunction "abnormal." (Pl.'s Ex. H at 2.)

[5] Konica had authorized IKON to service the BP 500C and CPP 500 copiers, and only IKON technicians serviced the copiers rented by Visual. Most repairs were performed by James Clayton, who received training from Konica.

On October 15, 2007, Visual sent an email to IKON alleging breach of implied warranties based on the copiers' malfunctioning. (Pl.'s Ex. I.) Visual also mailed a letter to Konica dated January 25, 2008, that contained the same allegations and included a draft complaint. (Pl.'s Ex. J.) This letter was the first notice that Visual gave Konica about any problem with the copiers.

## II. STANDARD

Federal Rule of Civil Procedure 56 provides that a court must grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c). Facts are "material" when they might affect the outcome of the case, and a "genuine issue" exists when the evidence would allow a reasonable jury to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-52 (1986). The moving party "is entitled to judgment as a matter of law" when the non-moving party fails to make an adequate showing on an essential element for which he has the burden of proof at trial. See Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999). To overcome a motion for summary judgment, the non-moving party "may not rely merely on allegations or denials" but must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. Pro. 56(e).

**III. DISCUSSION**

Visual's complaint asserts three claims. They are (1) breach of an express warranty, (2) breach of the implied warranty of merchantability, and (3) breach of the implied warranty of fitness for a particular purpose. All three claims are governed by the Pennsylvania Uniform Commercial Code ("UCC"), 13 Pa. Cons. Stat. Ann. §§ 1101-9710 (2009). I discuss each claim separately below.

**A.  Express Warranty**

First, Visual claims that the copiers' malfunctioning breached an express warranty that each copier could produce 150 thousand copies per month. (Pl.'s Resp. 2-4.) According to the UCC, "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." 13 Pa. Cons. Stat. Ann. § 2313(a)(2).

Visual offers two pieces of evidence to prove the alleged express warranty: (1) a print-out from Konica's website, and (2) a written proposal from IKON. Although both pieces of evidence contain an assurance that the Bizhub PRO C500 can produce 150 thousand copies per month, neither can prove the alleged warranty. First, nothing in the record shows what Konica's website contained in 2005 and 2006 when Visual decided to rent the copiers. Instead, the offered print-out is dated March 14, 2008. (Pl.'s Ex. E at 1.) Because a statement in 2008 cannot have been a basis for bargains reached in 2005 and 2006, this evidence cannot prove the alleged warranty. Second, any express warranty created by IKON's proposal cannot be enforced against Konica

because this statement was made by IKON and not Konica.[6]  Because Visual offers insufficient

evidence to prove the alleged express warranty, I grant summary judgment as to the claim of

breach of an express warranty.


## B.  Implied Warranty of Merchantability

Second, Visual claims that the copiers' malfunctioning breached the implied warranty of

merchantability.[7]  The UCC implies a warranty of merchantability whenever a merchant sells

goods.  13 Pa. Cons. Stat. Ann. § 2314(a).  Goods are "merchantable" only when they "pass

without objection in the trade under the contract description" and "are fit for the ordinary

purposes for which such goods are used."  13 Pa. Cons. Stat. Ann. § 2314(b).

Konica makes two arguments against this claim.  They are (1) that Visual waited too long

before notifying Konica about any problem with the copiers, and (2) that Visual has offered

insufficient evidence of defectiveness.  I consider each argument below.

---

[6] Visual argues that IKON's proposal was based on information from Konica.  But this implies at most that Konica gave IKON an express warranty, not that Visual received one.  The Distribution Agreement does contain an express warranty that each copier can produce 150 thousand copies per month, and IKON assigned this warranty to Visual in their lease agreements, but Visual specifically denies alleging a breach of this express warranty.  (Pl.'s Resp. 2-4.)

[7] Visual may sue Konica for breach of an implied warranty even though they have no direct contractual relationship.  See Moscatiello v. Pittsburgh Contractors Equip. Co., 595 A.2d 1198, 1203 (Pa. Super. Ct. 1991) (holding that a manufacturer sued for breach of warranty can be held liable to consumers who purchased from a dealer).

## 1. Timing of Notice

Konica's first argument relates to the timing of when Visual notified Konica about the allegations. According to the UCC, once a tender of goods has been accepted under a lease agreement, "within a reasonable time after the lessee discovers or should have discovered any default, the lessee shall notify the lessor and the supplier, if any, or be barred from any remedy against the party not notified." 13 Pa. Cons. Stat. Ann. § 2A516. "Whether a time for taking an action … is reasonable depends on the nature, purpose and circumstances of the action." 13 Pa. Cons. Stat. Ann. § 1205. "Where the facts are in dispute, the question of the reasonableness of the time when notice of breach of warranty was given is for the jury. … This is particularly true when the defect is not discoverable upon an ordinary inspection." Q. Vandenberg & Sons, N.V. v. Siter, 204 A.2d 494, 498 (Pa. Super. Ct. 1964).

Konica maintains that after discovering the alleged breaches of warranties Visual waited an unreasonable amount of time before notifying Konica. About four months passed from September 2007 when Visual discovered the alleged breaches of warranties until January 2008 when Konica was first notified.[8] Given the circumstances here, I find that a reasonable jury could find this length of time reasonable. Therefore, I deny summary judgment based on the timing of notice.

---

[8] Konica argues that Visual discovered the problem as soon as each copier malfunctioned for the first time. But the alleged breaches of warranties stem from the copiers' irreparable tendency to malfunction and not from particular instances of poor performance. Accordingly, the time when Visual should have discovered these breaches was when it should have concluded that further repairs were futile. Konica does not dispute that September 2007 was that time.

## 2. Proof of Defectiveness

In the second argument, Konica contends that Visual has offered insufficient evidence relating to the copiers' alleged defectiveness. To prove a breach of the warranty of merchantability, a plaintiff must show that the equipment obtained from the supplier was defective. Altronics of Bethlehem, Inc. v. Repco, Inc., 957 F.2d 1102, 1105 (3d Cir. 1992) (interpreting Pennsylvania law). This requires showing "(1) that the product malfunctioned; (2) that [the plaintiff] used the product as intended or reasonably expected by the manufacturer; and (3) the absence of other reasonable secondary causes." Id. (citing Brill v. Sys. Res., Inc., 592 A.2d 1377, 1379 (Pa. Super. Ct. 1991)).

Konica does not contest the first two elements, but it maintains that Visual has offered insufficient evidence to disprove that the copiers' malfunctioning resulted from repairs performed on them from 2005 to 2007. The record contains evidence that:

- Both copiers malfunctioned soon after Visual leased them (Pl.'s Ex. C);

- Only IKON technicians serviced the copiers (Pl.'s Ex. B ¶ 5);

- Konica authorized IKON to provide service to customers on the BP 500C and CPP 500 copiers (Pl.'s Ex. F ¶ 3);

- Most repairs were performed by James Clayton, who received training from Konica (Pl.'s Ex. C; Pl.'s Ex. F at 2); and

- An expert hired by Konica called the copiers' tendency to malfunction "abnormal" (Pl.'s Ex. H at 2).

A reasonable jury could conclude from this evidence that the copiers malfunctioned because of inherent defects. Therefore, I find that Visual has offered sufficient evidence of defectiveness,

and thus I deny summary judgment as to the claim of breach of the implied warranty of merchantability.

## C.  Implied Warranty of Fitness for a Particular Purpose

Third, Visual claims that the copiers' malfunctioning breached the implied warranty of fitness for a particular purpose.  The UCC implies a warranty of fitness for a particular purpose when "the seller at the time of contracting has reason to know: (1) any particular purpose for which the goods are required; and (2) that the buyer is relying on the skill or judgment of the seller to select or furnish suitable goods."  13 Pa. Cons. Stat. Ann. § 2315.  A plaintiff need not show "actual knowledge … if the circumstances are such that the seller has reason to realize the purpose intended or that the reliance exists."  U.C.C. § 2-315 cmt. n.1.  "The buyer, of course, must actually be relying on the seller."  Id.

Here, the term "particular purpose" has a specific meaning that distinguishes this warranty from that of merchantability:

> A 'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question.  For example, shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains.

Gall by Gall v. Allegheny County Health Dep't, 555 A.2d 786, 790 (Pa. 1989) (quoting U.C.C. § 2-315 cmt. n.2).

Konica argues that Visual has offered insufficient evidence to prove that Konica should have known of Visual's particular purpose. Visual's response consists of a footnote stating that obviously copiers are used for copying. (Pl.'s Resp. 5.) But this response fails to account for the difference between "ordinary purpose" and "particular purposes" under the UCC. Furthermore, the record does not contain any evidence suggesting that Konica had reason to know about any particular purpose or reliance of Visual in leasing the copiers. Indeed, Visual has not even offered evidence that it relied on Konica. Therefore, I grant summary judgment as to the claim of breach of the implied warranty of fitness for a particular purpose.

## IV. CONCLUSION

Based on the record, Visual cannot prove breach of an express warranty under 13 Pa. Cons. Stat. Ann. § 2312 or breach of the implied warranty of fitness for a particular purpose under § 2315. However, Visual could prove breach of the implied warranty of merchantability under § 2314. Therefore, I will grant summary judgment only as to two claims: (1) breach of an express warranty and (2) breach of the implied warranty of fitness for a particular purpose. And I will deny summary judgment as to the claim of breach of the implied warranty of merchantability.

s/Anita B. Brody

_____

ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:        Copies **MAILED** on _____ to: